COGNIGEN NETWORKS,
INC. Plaintiff,

v.

COGNIGEN CORP. and Thaddeus
Grasela Defendants.

No. C01–1077L.

United States District Court,
W.D. Washington
at Seattle.

Dec. 3, 2001.

---

David L. Garrison, Garrison & Associates, Seattle, WA, for Cognigen Networks Inc., plaintiffs.

Paul J Lawrence, Stephen A Smith, Preston Gates & Ellis, Seattle, Jeffrey L Eichen, Schnader Harrison Segal & Lewis, Philadelphia, PA, for Cognigen Corporation, Thaddeus Grasela, an individual, defendants.

## ORDER DISMISSING ACTION FOR LACK OF PERSONAL JURISDICTION

LASNIK, District Judge.

This matter comes before the Court on defendants Cognigen Corp. ("Cognigen–NY") and Dr. Thaddeus Grasela's ("Dr.Grasela") motion to dismiss plaintiff's complaint on the ground that the Court lacks personal jurisdiction over the defendants. Alternatively, defendants ask the Court to transfer the venue to the Western District of New York. For the reasons discussed below, defendants' motion to dismiss for lack of personal jurisdiction is granted.

### I. BACKGROUND

Plaintiff Cognigen Networks ("Cognigen–WA") is a publicly-traded Colorado corporation. Seattle is its principal place of business. It is a marketer of telecommunications and technology products such as long distance services, calling cards and computers. It operates through a network of 135,000 independent agents who earn commissions on sales.

Defendant Cognigen–NY is a New York corporation with Williamsville, New York, as its principal place of business. Dr. Grasela is its founder and president. Cognigen–NY, known as Pharmaceutical Outcomes Research, Inc. ("PHOR") before September 2000, designs pharmacological tests and clinical research studies, and analyzes clinical test data. Its clients are companies in the health care and pharmaceutical industries. Its web site (http://www.cognigencorp.com) describes its services, invites prospective employment candidates to apply, announces upcoming conferences and serves as an archive for an e-mail mailing list on the topic of data analysis. While most of Cognigen–NY's work is done at its headquarters, its

employees sometimes travel to clients' offices and attend conferences elsewhere. Cognigen has no branch offices, employees or representatives in the state of Washington. Dr. Grasela has visited the state three times in the last 10 years, twice for a conference and once at a client's request.

Cognigen–NY and Cognigen–WA co-existed peacefully until 2000 when their claims to the Cognigen name collided. In May 1999, PHOR filed an application with the U.S. Patent and Trademark Office ("USPTO") seeking federal registration for the service mark "Cognigen" in connection with business consulting for pharmaceutical and healthcare firms, electronic data storage and some forms of pharmaceutical research. In January 2000, Cognigen–WA filed the "Cognigen" mark for registration with the USPTO for use in telecommunications services.[1] Cognigen–WA became aware of a potential conflict in April 2000 as a result of a USPTO records search. The president and CEO of Cognigen–WA, Darrell Hughes, contacted Dr. Grasela in June 2000 to determine the nature of goods and services that Cognigen–NY offered. Apparently as a result of the exchange that followed and based on independent research, Mr. Hughes did not file an opposition to Cognigen–NY's application. (Hughes Decl. of 10/15/2001 at ¶¶ 6–7.) Mr. Hughes claims that he was not informed of PHOR's imminent plans to change the company name to Cognigen. Thereafter, Cognigen–WA began receiving e-mail at its cognigen.com e-mail address that was intended for Cognigen–NY, and it became aware of the corporate name change as well as of Cognigen–NY's web site at the address http://www.cognigen-corp.com. In December 2000, Cognigen–WA's attorney wrote to Cognigen–NY's lawyer objecting to the allegedly expanded use of the Cognigen mark and assertions on Cognigen–NY's web site that described Cognigen–NY as pushing the "limits of information technology and communications to create new options ..." and as a "global analytical communications tool." Cognigen–NY's attorney wrote back denying that the company had expanded into new areas and that its services were "limited to the pharmaceutical and healthcare industries and relate to statistical analyses and outcome research studies." (Grasela Exhibit B, Ellen Simpson Letter of 1/26/2001, at 2.) The letter further stated that when the descriptions of Cognigen–NY were read in the context of the surrounding paragraphs, it was clear that the company did data analysis used to market pharmaceutical products. The letter concluded that since the companies operated in separate spheres "we are of the opinion that the two marks can probably co-exist in the marketplace." *Id.* Cognigen–NY received no communication from Cognigen–WA for about six months.

The clash of the Cognigens accelerated in the summer of 2001. In July, a client of Cognigen–NY mistakenly sent an e-mail to Cognigen–WA with an invitation to a conference in Brazil. In a reply e-mail, an employee of Cognigen–WA lightheartedly informed the sender of the mistake and then went on to complain that Cognigen–NY's logo had been designed to look like Cognigen–WA's, that Cognigen–WA was forwarding several e-mails per day to Cognigen–NY, and that Cognigen–NY was infringing on Cognigen–WA's intellectual property. When officials at Cognigen–NY heard about this, they were not amused. The company's attorney sent an angry letter threatening to sue for libel by July 13, 2001 unless the Cognigen–WA employee apologized to the sender. Additionally, Cognigen–NY demanded that Cognigen–WA forward any misdirected e-mail and

---

1. Cognigen–WA was able to successfully register the mark on February 16, 2001.

refrain from replying to e-mail intended for Cognigen–NY.

On July 13, 2001, Cognigen–WA filed a complaint in the Western District of Washington claiming that Cognigen–NY had infringed its trademark and engaged in unfair competition in violation of state and federal laws. It sought damages, attorney's fees and costs, a declaration that it had not libeled defendants and an injunction preventing defendants from further use of the Cognigen mark.

In response, Cognigen–NY and Dr. Grasela have challenged this Court's exercise of personal jurisdiction. They claim that Cognigen–WA cannot show that either general or specific jurisdiction exists here. Even if the Court were to find that jurisdiction is properly asserted, they ask the Court to transfer this action to the Western District of New York, which, they claim, is a more convenient and suitable venue. Cognigen–WA counters that jurisdiction is properly asserted under recent Ninth Circuit case law.

## II. DISCUSSION

■ On defendant's motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to show that jurisdiction is proper. *See Lee v. City of Los Angeles*, 250 F.3d 668, 692 (9th Cir.2001). At this preliminary stage, plaintiff need only make "a prima facie showing of jurisdiction." *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir.1995). Plaintiff must allege facts to support its case; these are assumed to be true for jurisdictional analysis. *See, e.g, Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 268 (9th Cir. 1995). The exercise of jurisdiction has to satisfy the requirements of the state long-arm statute and Constitutional due process. *See id.* at 269. In the state of Washington, the long-arm statute is coextensive with the outer limits of due process; therefore this Court only needs to

ensure that the Constitutional requirements for personal jurisdiction are met. *See, e.g., Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1404–05 (9th Cir.1994).

■ Under the due process clause, a Court can assert jurisdiction over a nonresident defendant only if it has a threshold level of "minimum contacts" with the forum state such that "traditional notions of fair play and substantial justice" are not offended. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal citations omitted). This standard is satisfied if the defendant has a continuous and systematic presence in the forum state, in which case general jurisdiction is said to exist, or if the claim arises out of the defendant's forum-directed activities, when specific jurisdiction may be asserted. *See Helicopteros Nacionales de Colombia, S.A. v. Hall* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Neither Cognigen–NY nor Dr. Grasela has any continuous or systematic presence in Washington. General jurisdiction is therefore not applicable. Instead, plaintiff tries to make the case for specific jurisdiction. In the Ninth Circuit, for specific jurisdiction, "(1) [t]he nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable." *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir.1998). The first requirement is the most critical. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 416 (9th Cir.1997). Plaintiff contends this requirement is satisfied under the Ninth Circuit's usage of the effects test formulated

by the U.S. Supreme Court in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).

The Calder effects test is generally applicable in the context of claims arising from intentional torts. In *Calder*, the entertainer Shirley Jones sued a writer and editor of the National Enquirer for libel in a California court. The defendants were Florida residents and had done most of their research and writing in that state. The Supreme Court held that jurisdiction was proper "based on the 'effects' of their Florida conduct in California." *Calder*, 465 U.S. at 789, 104 S.Ct. 1482. Ms. Jones' reputation was affected mainly in California where she worked. Moreover, the Court noted, the reporter and editor were not charged with "untargeted negligence" but with engaging in "intentional, and allegedly tortious, actions ... expressly aimed at California." *Id.* They knew that their article would have had a "potentially devastating impact" on Ms. Jones in California. In these circumstances, personal jurisdiction over defendants was proper.

The Ninth Circuit applied the *Calder* test in *Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082 (9th Cir. 2000). In *Bancroft*, a California computer services corporation, Bancroft & Masters ("B & M"), which had rights to the domain name "masters.com," brought an action against a Georgia golf club, Augusta National Inc. ("ANI") which held the "Masters" trademark. *See Bancroft*, 223 F.3d at 1084–85. Prior to the action, ANI had written to the Internet domain name registrar, Network Solutions, Inc. ("NSI"), challenging B & M's use of the domain name "masters .com." This had the effect of triggering NSI's dispute resolution policy under which B & M would be unable to use the domain name, at least temporarily, unless it obtained a declaratory judgment establishing its right to use it. *See id.* at

1085. ANI also had written a cease-and-desist letter to B & M. B & M's lawsuit, brought in federal district court in California, sought a declaratory judgment establishing its right to use the masters.com domain name and cancelling ANI's federally registered trademark. The Ninth Circuit reversed the district court's dismissal for lack of personal jurisdiction holding that purposeful availment had been demonstrated under the *Calder* effects test and that the other requirements for jurisdiction were satisfied under the facts of the case. *See id.* at 1085. The effects test, the court stated, requires that the defendant "(1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Id.* at 1087. The court held that express aiming occurs "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Id.* at 1087. The court made clear, however, that the *Calder* effects test could not mean that any "foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction." *Id.* at 1087. Wrongful conduct was essential. Two of three judges noted in a concurrence that if it turned out that the defendant's conduct was not wrongful but was "reasonabl[e] and in good faith," personal jurisdiction would be "ripe for challenge." *Id.* at 1089.

According to Cognigen–WA, defendants engaged in express aiming and satisfied the requirements of the effects test when they assured plaintiff in informal negotiations via a phone call and an exchange of letters that the defendants' use of its mark would not infringe or dilute plaintiff's mark. These intentional acts, Cognigen–WA claims, caused it harm because it led to the company foregoing the chance to

oppose Cognigen–NY's trademark application "before any infringement, dilution, or unfair competition had occurred." (Plaintiff's Mem. of Opp. at 9.) Furthermore, plaintiff argues that defendants expressly aimed at Washington when they used their mark and caused infringement and dilution of Cognigen–WA's mark. Finally, defendants are alleged to have engaged in unfair competition against Cognigen–WA. Cognigen–WA claims that these acts were aimed at Washington because defendants knew or should have known that Cognigen–WA's business headquarters are in Seattle and therefore the brunt of the harm would be felt in Washington.

Each of the defendants' actions, as alleged by the plaintiff, is assumed to be true and evaluated to determine whether it creates specific jurisdiction over the defendants.

### (A) Assurances

■ It should be noted at the outset that to the extent that Cognigen–WA claims that defendants' breached an agreement created by its assurances, the effects test would not be applicable since it is generally used in causes of action arising from intentional torts. *See Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 145 F.Supp.2d 1168, 1174 (N.D.Ca.2001) (noting that "in every Ninth Circuit decision to date in which the effects test has been applied, the plaintiff's cause of action has been akin to a tort claim or the defendant's conduct has been tortious in nature"); *see also McGlinchy v. Shell Chemical Co.*, 845 F.2d 802 (9th Cir.1988) (en banc) (refusing to apply *Calder* effects test to a contract claim).

However, assuming that defendants' allegedly false assurances are tortious "in nature" and the effects test is therefore applicable, they still do not satisfy the *Bancroft* application of the effects doctrine. There, personal jurisdiction over the defendant company was predicated over the immediate and serious effect that the defendant's wrongful letter had on the plaintiff company's rights vis-à-vis its domain name. As the court made clear, "[t]his case arises *principally* out of ANI's letter to NSI, and that letter did more than warn or threaten B & M. Under NSI procedures, the letter would have operated automatically to prevent B & M from using its website had B & M not filed suit." *Bancroft*, 223 F.3d at 1089 (emphasis added). Here, there is no allegation of either a precipitous nor a wrongful action in defendants' assurances to plaintiff by letter or phone call.[2] In such a case, where the parties have communicated with each other in a series of letters and phone calls over several months, and where the communication by defendants creates no potential for immediate extinguishing of contractual, property or other rights, the exercise of specific jurisdiction over defendants based on some allegedly false assurances would violate Constitutional due process.

However, even if this Court assumes that the defendants' assurances were wrongful and somehow amounted to express aiming, jurisdiction over defendants would still be improper. This is because a second requirement of specific jurisdiction is that claims asserted in the complaint arise from the forum-directed activities. *See id.* at 1088. In this Circuit, this deter-

---

**2.** Plaintiff has not claimed that defendants' threat of a libel lawsuit constituted express aiming that left it with no choice but to file a lawsuit itself. Even if such a claim had been made it would fail. First: The letter sent by Cognigen–NY's counsel gave Cognigen–WA the option of directing its employee to apologize and avoid litigation. Second: The *Bancroft* court made clear that a cease-and-desist letter was not enough to create jurisdiction. *See Bancroft*, 223 F.3d at 1089.

mination is made by considering whether the claims would have risen "but for" the contacts between defendants and the forum state. *See, e.g., Ziegler,* 64 F.3d at 474. Here, the forum-directed activities, as alleged by the plaintiff, consisted of false assurances that fooled Cognigen–WA into holding off on opposing Cognigen–NY's application to the USPTO. However, in its complaint, Cognigen–WA has not claimed fraud or that an implied contract was created by the assurances and that the defendants breached. It is unclear that this litigation would not have been initiated "but for" the alleged knowing assurances given by the defendants.[3] Mr. Hughes made the decision not to oppose Cognigen–NY's application at least partly because of his own independent research. (Hughes Decl. at ¶¶ 6–7 .) One would have to believe that in the absence of defendants' assurances, plaintiff would have felt threatened by Cognigen–NY's use of the Cognigen mark in the pharmaceutical area (despite the independent research); it would have followed up by opposing Cognigen's registration effectively; and finally, the claims of infringement, dilution and unfair competition, and the declaratory judgment asked for here, would not have been filed. Making these assumptions would amount to nothing less than rampant speculation and the Court declines to do so. The relationship between the claims and the defendants' assurances is far too attenuated for the purpose of asserting specific jurisdiction. *Cf. Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir.1995) (noting that activities of a defendant that did not give rise to the plaintiff's cause of action "do not weigh in favor of an exercise of specific jurisdiction.")

### (B) Intellectual Property Torts

■ Cognigen–WA has also claimed that defendants expressly aimed at Washington state when they caused trademark infringement and dilution and engaged in unfair competition. Cognigen–WA rests its claim on defendants' use of the Cognigen mark. Plaintiff points to the fact that Cognigen–NY changed its name and launched its web site with knowledge of Cognigen–WA's existence. Cognigen–WA also claims consumer confusion has occurred and points to numerous misdirected e-mails it receives as well as to Cognigen–NY calling itself a "global analytical communications company" and a "global analytical communications tool." (Plaintiff's Mem. in Opp'n at 3.) However, these activities do not amount to express aiming under the law of this Circuit.

For jurisdictional purposes, defendants' conduct must constitute *wrongdoing* aimed at the resident plaintiff that causes injury to it at its state of residence. In *Panavision Int'l v. Toeppen,* 141 F.3d 1316 (9th Cir.1998), the court upheld jurisdiction over a defendant who had been shown to engage in a scheme to register trademarks as domain names for the purpose of extorting money from the plaintiff. However, the court clearly declared the limits of its ruling: "We agree that simply registering someone else's trademark as a domain name and posting a web site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another." *Id.* at 1322. Key to the upholding of jurisdiction was that some additional wrongdoing was shown. *Id.* at 1321. The defendant in that case had registered domain names he thought would be desirable to many companies, including Delta Air-

---

**3.** The Ninth Circuit has stated that intent is not required for a finding of trademark infringement. *See e.g., Brookfield Communications, Inc. v. West Coast Entertainment Corp.,* 174 F.3d 1036 (9th Cir.,1999). At least as evidence of intent to cause consumer confusion, defendant's assurances would not therefore be needed.

lines, Neiman Marcus, Eddie Bauer and Lufthansa. He had also attempted to sell domain names to some of these companies for thousands of dollars. *Id.* at 1319. Here, assuming that all the facts alleged by plaintiff are true, defendants' conduct, in changing the company name and using a web site, amounts at most to acting with knowledge of the plaintiff's existence. These actions do not amount to wrongdoing required for the effects test under the rule of *Panavision Int'l.*[4] A mere recitation that intellectual property torts have occurred, without more to support an allegation of wrongdoing, is not enough for jurisdictional analysis. Moreover, the evidence of the misdirected e-mails may be relevant to an inquiry going to the merits of the dispute; however, for jurisdictional purposes they do not constitute evidence of wrongdoing by *defendants.* Finally, the context in which defendants' self-descriptions are displayed makes it plain that Cognigen–NY is an analytical communications tool for pharmaceutical and healthcare companies. Again, they do not amount to evidence of wrongdoing.

■ A defendant's knowledge of a resident plaintiff's use of a mark in an intellectual property tort claim is not enough to satisfy the effects test for personal jurisdiction. Something more, such as wrongful conduct, must be alleged, which the plaintiff has not successfully done.

Therefore, neither plaintiff's allegation that defendants gave false assurances nor its claim that Cognigen–NY committed intellectual property torts allows this Court to assert specific jurisdiction over the de-

fendants. Cognigen–WA must therefore pursue this litigation, if it still wishes to do so, in another forum.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss for lack of personal jurisdiction is GRANTED. The Clerk of the Court is directed to issue a judgment dismissing this case WITHOUT prejudice.[5]

---

4. Defendants cannot even be charged with the knowledge that their conduct would injure plaintiff, a requirement of the *Calder* effects test. This is because after Cognigen–NY's counsel sent her letter in January 2001, the company did not hear from Cognigen–WA's counsel until the events that precipitated this litigation. Cognigen–NY could easily have as-

sumed that Cognigen–WA felt it was not being injured.

5. Plaintiff has misspelled Dr. Grasela's name in the complaint and other papers. The Clerk of the Court is directed to use the correct spelling of Dr. Grasela's name on court documents as it appears in this Order.