U.S. VESTOR, LLC, Altura S. Ewers, Plaintiffs,

v.

**BIODATA INFORMATION TECHNOLOGY AG, et al., Defendants.**

Biodata Information Technology North America, Inc. Plaintiff,

v.

Biodata Information Technology AG, et al. Defendants.

Nos. C 02–1414 JL, C 02–1714 JL.

United States District Court, N.D. California.

Oct. 28, 2003.

Aaron S. Milberg, Haas & Najarian, San Francisco, CA, Patrick C. Campbell, Law Offices of Patrick C. Campbell, Oakland, CA, Stephen D. Finestone, Law Offices of Stephen D. Finestone, San Francisco, CA, for Plaintiffs.

James Arthur Hughes, Robert T. Sullwold, Sullwold & Hughes, San Francisco, CA, Patricia A. Griffin, Ralph A. Desena, Richard A. Cirillo, King & Spalding, New York City, Brian Maschler, Jack B. McCowan, Jr., Gordon & Rees, LLP, San Francisco, CA, for Defendants.

## DISMISSAL

### Granting Docket # 12, 17

LARSON, United States Magistrate Judge.

### Introduction

The motion to dismiss of individual defendants Claus Platen, Tan Siekmann and Peter Trautmann and corporate defendant Biodata Systems Gmbh (formerly known as BS Systems Gmbh) came on for hearing before this court on July 30, 2003. Jack P. McCowan and Brian P. Maschler, GORDON & REES LLP, appeared for Defendants. Patrick C. Campbell, LAW OFFICES OF PATRICK C. CAMPBELL, appeared for Plaintiffs Altura S. Ewers and Biodata Information Technology North America ("BITNA").

Plaintiff asks this Court to redress the wrongs done to him by Defendants, German businessmen and German corporations. He claims they conspired to prevent him from acquiring BITNA, the American subsidiary of a German company, Biodata Information Technology AG. According to Plaintiff, Defendants bled BITNA dry, stole its customers and left him with nothing. He is neither an owner nor a shareholder of either company. He is the only party who resides in the U.S. All the individual and corporate defendants are in Germany. He asks this Court to overlook or overrule the decisions of the German Insolvency Administrator who presided over the reorganization of Biodata AG, which led to changes in BITNA. This Court finds no justification to compel

the appearance of German citizens in an American court, to interfere in the affairs of a German corporation, or to meddle in the German courts' disposition of the affairs of German citizens and a German corporation. This Court also takes judicial notice of Judge Spero's ruling in the related case, and finds that Plaintiff Ewers has no standing to sue on behalf of Plaintiff BITNA.

The moving and opposing papers and the arguments of counsel having been fully considered, and good cause appearing, it is hereby ordered that Defendants' motion is granted. All causes of action against Defendants are dismissed with prejudice, for lack of personal jurisdiction. All causes of action brought by plaintiff Altura S. Ewers on behalf of Biodata Information Technology North America, Inc. ("BITNA") are dismissed with prejudice for lack of standing to sue.

### Procedural Background

All parties to this action consented to the jurisdiction of the magistrate judge as provided by 28 U.S.C. § 636(c). These cases are related to each other and to No. C 02–2722 JL, Biodata Systems GmbH v Ewers. That case was resolved in May 2003 following a settlement conference and was dismissed prior to the hearing on this motion.

### Factual Background

Plaintiff Altura S. Ewers ("Ewers") was an officer and director of Biodata Information Technology North America ("BITNA"). This company and its parent in Germany produced and distributed telecommunications and network security products. Products include encryption devices such as "Babylon" for translation of security sensitive data and network security systems such as "BIGfire+" and "SPHINX", which provide protection from unauthorized access for computer networks and systems.

BITNA was once a wholly-owned subsidiary of the German company Biodata AG, now in insolvency proceedings in Germany. In his complaint, Ewers contends he attempted to purchase BITNA and other assets liquidated by the Insolvency Administrator, which is comparable to a Trustee in Bankruptcy in the U.S. Ewers was unsuccessful. Defendant Biodata Systems GmbH (formerly BS Systems GmbH) ("Biodata Systems"), another German company, successfully bid on and purchased the operating assets of Biodata AG and BITNA. Defendant Claus Paten is the President of Biodata Systems and of BITNA.

Defendant Tan Siekmann ("Siekmann") was the CEO of Biodata AG before it was declared insolvent. Defendant Peter Trautmann ("Trautmann"), Mr. Siekmann's attorney, owns a German company, Tom Holdings GmbH, which owns 100% of the shares of Biodata Systems.

Ewers filed his complaint against Biodata Information Technology AG, BS Systems GmbH, Tan Seikmann, Claus Paten, Fritz Westhelle, Jochen Brinkmann, Gerald Burghardt and Peter Trautmann on March 22, 2002, in the "U.S. Vestor" case, C–02–1414, on behalf of U.S. Vestor, as an officer and principal shareholder, and on behalf of BITNA, as President. Plaintiffs allege interference with prospective economic advantage, fraud, and conspiracy to interfere with prospective economic advantage.

Ewers filed his complaint against the same defendants on April 10, 2002 in the "BITNA" case, C–02–1714, on behalf of himself as an individual and on behalf of BITNA as a director and officer. Plaintiffs allege the same causes of action as in the U.S. Vestors case, with the exception of the counts for fraud and conspiracy, and add counts for conversion, money had and

received, breach of contract and intentional interference with contract.

Plaintiffs in both cases asserted federal jurisdiction based on diversity of citizenship.

### Legal Argument—Defendants

Defendants request the court to:

· 1) Dismiss all claims brought against Defendants Westhelle, Brinkmann, Burghardt and Biodata AG for lack of personal jurisdiction pursuant to Fed. R.Civ.P. 12(b)(2);

· 2) If the court does not dismiss the action for lack of personal jurisdiction, dismiss Counts One, Two, Three and Four in the BITNA Complaint for lack of standing and failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6);

· 3) If the court does not dismiss the action for lack of personal jurisdiction, dismiss Counts Five and Six in the BITNA Complaint and Counts One, Two and Three in the Vestor Complaint for failure to state a claim pursuant to Fed, R. Civ. P. 12(b)(6); and

· 4) If the court does not dismiss the action for lack of personal jurisdiction, dismiss any and all remaining claims under the doctrine of *forum non conveniens.*

· 5) Take judicial notice of Judge Spero's injunction in the related case (C–02–2722) and find that Plaintiff Ewers has no standing to sue on behalf of Plaintiff BITNA.

Defendants move to dismiss Plaintiffs' complaint under Rule 12(b)(2), Federal Rules of Civil Procedure, for lack of personal jurisdiction over the individual and corporate defendants, all of whom are citizens of Germany. Defendants contend that Platen, Siekmann, Trautman and Biodata Systems GmbH have not purposefully availed themselves of the privilege of conducting activities in California. Plaintiffs' claims do not arise from Biodata Systems'

alleged contacts with California, nor from Siekmann's former ownership of shares in BITNA. Defendants further contend that if this court were to assert personal jurisdiction over Platen, Siekmann, Trautman and Biodata Systems would be unreasonable.

Should this court find it has jurisdiction, Defendants ask the court to dismiss the counts for interference with prospective economic advantage, conspiracy to interfere and fraud for failure to state a claim.

Defendants also ask this Court to dismiss claims for conversion, money had and received, breach of contract, or intentional interference with contract, because Plaintiff Altura Ewers has no standing to sue, either on his own behalf, or on behalf of Biodata Information Technology North America, Inc. ("BITNA").

Defendants support this contention in part with Ewers' stipulation and the preliminary injunction in the No. C 02–2722 case—(Hon. Joseph C. Spero) that Biodata Systems AG is the lawful owner of BITNA, and that Ewers cease and desist from taking any action on behalf of BITNA. Therefore, Plaintiffs are barred, under the doctrine of collateral estoppel and res judicata, from any assertions to the contrary.

Defendants contend as well that Plaintiffs' claims for fraud, tortious interference with prospective economic advantage and conspiracy fail to state a valid cause of action under California law.

Defendants ask the court to dismiss any remaining claims under the doctrine of *forum non conveniens.*

### Legal Argument—Plaintiffs

Plaintiffs ask this court to deny Defendants' motion and instead to assume jurisdiction over Defendants because they "committed tortious acts directed at the plaintiffs here and . . . purposefully availed

themselves of the California courts by having filed suit here in California against Ewers in the related case." (Plaintiffs' Opp. at 8)

Plaintiffs concede that none of the Defendants is domiciled in California (*Id.*). Plaintiffs invoke the court's general jurisdiction over Biodata Systems AG and GmbH as parent entities to BITNA. (*Id.* at 9) Plaintiffs proceed on theories of alter ego and agency. They contend that AG "treated BITNA as if it were an extension of AG," and that the BITNA accounting staff reported directly to AG rather than to Ewers, its sole officer and director. (Judicial Notice,[1] Ex. 6, Chan Decl. ¶ 1:23–2:2).

Plaintiffs accuse AG of taking business from BITNA by executing a contract with Cylink, a customer that BITNA developed in San Jose, California, and withdrawing $600,000 from BITNA's account without its corporate authorization. (Ewers Decl. at 3:11–13; Judicial Notice, Ex. 3; Ewers Decl., Ex. C).

Plaintiffs contend that AG caused BITNA to remain undercapitalized, so that it ultimately went bankrupt when the Insolvency Administration executed the German Insolvency Contract, which required BITNA to waive any claims against Biodata Systems AG. Plaintiffs claim defendant Siekmann was the ultimate winner, emerging as the guarantor of the German Insolvency Contract, leaving Ewers holding an empty bag. (Judicial Notice, Ex. 2, McGowan Decl., Ex. A)

GmbH acquired all of BITNA's stock as part of the German Insolvency Contract and defendant Platen, CEO of GmbH, completed the takeover in March 2002, which Ewers cites as evidence that "GmbH was a co-perpetrator of the fraud and in-terferences with prospective business activity and a co-conspirator as well with AG." (Opp. at 11)

Defendant Westhelle participated in the conspiracy by writing a letter stating that "Platen (another defendant) is to carry out his instructions." (*Id.*) Not only was BITNA stripped of $600,000, but also of a one million dollar contract with Cylink. (Judicial Notice, Ex. 4, Smith Decl., Ex. A).

Plaintiffs plead with this court to assume jurisdiction lest a foreign company create a California subsidiary and use it as a pawn to harm Ewers, a California resident.

■ If the Court does not find jurisdiction based on a theory of alter ego, Plaintiffs ask it to find that BITNA was the agent of AG as defined in *Doe v. Unocal Corp.*, 248 F.3d 915, 928–929 (9th Cir. 2001). To constitute agency, this court must find that the subsidiary's presence substitutes for the presence of the parent. *Id.* Plaintiffs believe AG, through its CEO, Siekmann, "had BITNA book contracts with BITNA's customers that were not fully executed and then order equipment from AG in Germany and its Swiss subsidiary that were never delivered." (Opp. at 11) Plaintiffs claim this was a ruse to make AG appear financially healthy, presumably at BITNA's expense. Plaintiffs also claim that defendant Westhelle used BITNA to deceive Ewers and U.S. Vestor that BITNA was financially viable, to lure Ewers into believing he could purchase BITNA separately and then to leave him out of the loop in the Insolvency Contract.

As additional support for this Court's jurisdiction, Plaintiffs claim that Defendants availed themselves of the California forum by filing suit in the related case and

---

**1.** The court may accept declarations outside the pleadings to decide *forum non conveniens* or personal jurisdiction. *Van Cauwenberghe v. Biard,* 486 U.S. 517, 529, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988); *AT & T v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 589–591 (9th Cir.1996).

that the Insolvency Contract states that American law is controlling.

Plaintiffs contend that Defendants as corporate officers submitted themselves to this Court's jurisdiction by committing torts against California residents. *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 521 (9th Cir.1989). Defendants' acts of fraud and misrepresentation therefore subject both them and their corporations to this Court's jurisdiction. *Taylor–Rush v. Multitech Corp.*, 217 Cal.App.3d 103, 265 Cal.Rptr. 672 (1990). The conspiracy of two or more defendants may bring in all the defendants. *Textor v. Board of Regents of No. Ill. University*, 711 F.2d 1387, 1392 (7th Cir.1983).

Ewers claims Defendants had sufficient contact with the forum through Defendants' communications with him in California leading him to believe that if he lent money to BITNA and kept it financially viable he could purchase it himself. (Ewers Decl. at 7:1–8)

Plaintiffs contend that Defendants' foreign acts had a foreign effect—their actions in Germany and their communications with Ewers from Germany had an effect on a California citizen and a California corporation. Plaintiffs concede, however, that mere telephone and mail contacts with minimal physical presence are insufficient to confer jurisdiction. (Opp. at 15) Plaintiffs attempt to distinguish *Davis v. American Family Mutual Ins. Co.*, 861 F.2d 1159, 1160 (9th Cir.1988). In that case a third party agent was sent to represent the foreign corporation. In the case at bar, AG and GmbH sent their CFO and CEO "to carry out their misrepresentation and interference."

Plaintiffs also contend that the second prong of the specific jurisdiction test is met because the foreign entities "purposefully directed" their activities at a California resident. They claim that the Insolvency Administration for AG made misrepresentations to Ewers that he could purchase BITNA separately at a fair price, inducing him to lend money to BITNA and keep it operating in California. Then the Administration withdrew that opportunity, and told him he must bid on AG as a whole. Plaintiffs cite a series of telephone calls defaming Ewers and thwarting his attempts to act on behalf of BITNA as evidence of a conspiracy.

Plaintiffs claim that this forum's exercise of jurisdiction is presumptively reasonable because purposeful availment has been established. They observe that GmbH asked this court to enjoin actions of parties in California and obtained a preliminary injunction against Ewers and a possible judgment, which this court would enforce.

Plaintiffs do not see this Court's jurisdiction as interference with German sovereignty, because they allege wrongdoing against a California corporation (Opp. at 18). The German insolvency proceedings, they believe, are irrelevant to the issue of money loaned to BITNA "based on the misrepresentations of the Insolvency Administration." They cite no other basis for the reasonableness of this Court's assuming jurisdiction. (*Id.*)

Plaintiffs contend that the forum state has an interest in the adjudication of a dispute involving a California corporation. The German Insolvency Contract even provides that American law will be controlling. Plaintiffs also contend that because defendant Platen is CEO, CFO and Secretary of a California corporation and because this lawsuit "is about fraud and interference against Ewers and U.S. Vestor" that California is the most efficient forum. (*Id.*) Even though an alternative forum is available in Germany, Plaintiffs contend that both Siekmann and Platen have adequate contacts with California to support

jurisdiction here because they "wrongfully orchestrated and directed (in conspiracy with other Defendants as part of the insolvency of AG) the acquisition of the rights and assets described in the complaint ..." (Opp. at 19)

### Analysis and Conclusion

In order for this court to exercise personal jurisdiction over Defendants, Plaintiffs must demonstrate that:

· (1) Defendants performed acts or transactions within the forum or otherwise purposefully availed themselves of the privilege of conducting activities within the forum;

· (2) Plaintiffs' claims arise out of or result from Defendants' activities in the forum; and

· (3) Exercise of this court's jurisdiction is reasonable. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir.2000). Plaintiffs fail all three tests.

### 1) Defendants did not purposefully avail themselves of the California forum.

#### A) Biodata AG was not BITNA's alter ego

■ Plaintiffs assert this court's jurisdiction over Biodata AG based on theories of alter ego and agency—that Biodata AG was BITNA's alter ego and was therefore in the same position as BITNA, its California subsidiary, and therefore subject to this Court's jurisdiction. To support this theory, Plaintiffs would have to prove that (1) there is such unity of interest and ownership that the separate legal personalities of the two entities no longer exist; and (2) recognizing their separate legal identities would result in fraud or injustice. *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir.2001).

Ewers can proffer only a handful of actions by AG, none of which show anything more than normal corporate oversight by a parent of a subsidiary. For example: [AG] "told Ewers and BITNA to book revenues before contracts were fully executed;" BITNA's accounting staff reported to AG; AG "bypassed BITNA" by executing a business contract directly with a U.S. customer named Cylink; and finally, AG withdrew $600,000 from BITNA's account without its "authorization." (Vestor Opp. at 10; BITNA Opp. at 8–9). In addition, Plaintiffs allege that after AG filed for bankruptcy, the German Insolvency Administrators disregarded BITNA's separate existence by ignoring Ewers' requests to return the $600,000 and refusing to compensate BITNA for revenues lost from the Cylink contract. (Vestor Opp. at 10, BITNA Opp. at 9). The Court finds that these actions, even taken together, do not represent the pervasive dominance and control necessary to pierce AG's corporate veil and confer jurisdiction.

#### B) A subsidiary's minimum contacts do not confer jurisdiction over the parent corporation.

■ The fact that on March 18, 2002 Biodata Systems purchased a controlling interest in a California subsidiary, BITNA, does not suffice to confer jurisdiction in this Court over the parent company. It is well settled that "[t]he existence of a relationship between a parent company and its subsidiaries is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with the forum." *Doe v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir.2001), citing *Transure, Inc. v. Marsh & McLennan, Inc.*, 766 F.2d 1297, 1299 (9th Cir. 1985). *See also American Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586 at 590 (9th Cir.1996) (where foreign parent company conducted no business and maintained no offices in California, mere fact that it maintained a majority

interest in a California subsidiary did not suffice to confer jurisdiction.)

## C) Defendants only filed suit in California because of the actions of Plaintiffs

Plaintiffs' contention that Defendants have availed themselves of this forum by filing suit in No. C 02–2722 is disingenuous. Biodata Systems was forced to file suit in this district because Ewers, after he was removed from office as a director of BITNA, and after BITNA had been sold to Biodata Systems, went to BITNA's offices and took property, including computers and servers. He also re-registered the BITNA domain name, and began diverting customers. The new domain name service would not return the name to Biodata Systems without a court order. (McCowan Decl. In Support of Motion for Temporary restraining Order in Vestor Case, C–02–2722 JCS, at p. 8., Ex. G to Plaintiffs' Request for Judicial Notice). Defendants' recourse to this court to rescue their property does not bind them for all other proceedings.

## D) A business trip is not enough contact to establish jurisdiction

Jurisdiction does not attach merely because two of the officers of the German corporations visited California on a business trip. *FDIC v. British–American Ins. Co.*, 828 F.2d 1439, 1443 (9th Cir.1987) (holding that temporary physical presence of a corporation's officer in California is insufficient to establish purposeful interjection); *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1029–1030 (5th Cir.1983) (finding no purposeful availment by defendant corporation even though officers of the corporation visited the forum state twice to inspect plaintiff's facilities.)

## 2) Defendants did not act within the forum to harm Plaintiffs

Plaintiffs cannot prove that Defendants have sufficient activities with in California to constitute minimum contacts, the first prong of the jurisdiction test; they argue instead that California jurisdiction may be inferred from two alternate theories: conspiracy and the foreign-acts-with-foreign-effects-test.

## A) Plaintiffs' foreign act with foreign effect theory fails for insufficiency

### i) The conspiracy claims are insufficient to confer jurisdiction

 The conspiracy claims are insufficient because California law does not recognize conspiracy as a basis for acquiring jurisdiction over a foreign defendant. *City and County of San Francisco v. Philip Morris*, 1998 WL 230980 at *5 (N.D.Cal., March 3, 1998); *Mansour v. Superior Court*, 38 Cal.App. 4th 1750, 1760, 46 Cal. Rptr.2d 191 (1995). The torts Plaintiffs complain of are also insufficient to confer jurisdiction. The effects test is only satisfied when a resident of the forum state alleges that a defendant knowingly targeted him and caused him harm. *Bancroft & Masters*, 223 F.3d at 1087.

### ii) Assurances are not misrepresentations

Plaintiffs allege that the German Insolvency Administrators made the following misrepresentations to Ewers: 1) that he would be able to purchase BITNA; 2) that an investor other than Tan Siekmann would be found to keep Biodata AG afloat; and 3) that Ewers had to bid on Biodata AG as a whole and that Siekmann would not be involved. (Vestor Opp. at 16). These are not actionable misrepresentations, because they are merely assurances. Such communications did not create the potential for immediately extinguishing

any contractual, property or other rights of Plaintiffs, and therefore are insufficient to create jurisdiction by their effects. *Cognigen Networks, Inc. v. Cognigen Corp.*, 174 F.Supp.2d 1134, 1139–1140 (W.D.Wash.2001).)

Plaintiffs fail to show that their injuries would not have occurred but for Defendants' conduct. *Hancock v. Hitt*, 1998 WL 345392 at *2 (N.D.Cal. June 19, 1998). In the *Vestor* complaint, Plaintiffs contend that they were injured because Defendants did not conduct a legitimate auction of Biodata AG's assets, that is, one in which Ewers could purchase BITNA separately from AG's other assets and the Insolvency Administrators were looking for an investor other than Siekmann.

Defendants point to the timing of Plaintiffs' complaints as undermining their legitimacy. Ewers claims that the misrepresentation that he could purchase BITNA separately was made before there was any plan to auction Biodata AG's assets (Ewers Decl. at 17, 20); the second alleged misrepresentation, regarding an investor other than Siekmann, is unrelated to the claim that the auction was rigged in Siekmann's favor; and the claim that Ewers was deceived that he could bid on AG as a whole and that Siekmann would not be involved is alleged to have been made after Plaintiffs were already directly involved in the auction process (Vestor Opp. at 16). Consequently, Ewers' alleged exclusion from the bidding process could not have been caused by the alleged misrepresentations. The second prong of the jurisdictional test is not satisfied: Plaintiffs' claims do not arise out of Defendants' activities within the forum.

### iii) Defendants' actions were not against Plaintiffs

In the BITNA Opposition, Ewers alleges two slightly different but related instances of interference by AG and the Insolvency Administrator; 1) that the Insolvency Administrator asked him to lend money to BITNA; and 2) that the Defendants negotiated and executed the Sales Contract. He alleges a third interference by GmbH—that it sent Platen to California to remove Ewers from his position as an officer and director of BITNA, and incidentally, to reclaim the BITNA computers and servers containing its domain name and other intellectual property.

Plaintiffs cannot credibly characterize any of these actions as a tort and, therefore, a basis for this court's jurisdiction over any of the Defendants. When Defendants removed funds from BITNA's accounts and extinguished BITNA's rights against the parent company as part of the Distribution Agreement, they were acting against BITNA, not Ewers. Ewers was not a party to the Distribution Agreement and owned no shares of BITNA stock. He was neither targeted nor injured. The requirement of harm to Plaintiffs resulting from Defendants' activities in the forum is not met.

### 3) Exercise of jurisdiction by this court would not be reasonable.

The third prong of the specific jurisdiction test is whether such jurisdiction would be reasonable. The reasonableness requirement may defeat California jurisdiction even if a defendant has purposefully engaged in California activities. *Rippey v. Smith*, No. C–99–1488, 1999 WL 1012316 at *2 (N.D.Cal. Oct. 28, 1999), *aff'd*, 16 Fed.Appx. 596, 2001 WL 630256 (9th Cir.2001). This court must consider seven factors to determine whether it is reasonable to assert personal jurisdiction over Defendants in this case:

1) the extent of the defendant's purposeful injection into the forum state's affairs;

2) the burden on the defendant of defending in the forum;

3) the extent of conflict with the sovereignty of the defendant's state;

4) the forum state's interest in adjudicating the dispute;

5) the most efficient judicial resolution of the controversy;

6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and

7) the existence of an alternative forum. *Rippey,* 1999 WL 1012316 at *2.

In the case at bar, Plaintiffs concede that factors 6 and 7, convenient and effective relief for the plaintiff and existence of an alternative forum, favor Defendants. (Vestor Opp. at 18–19; BITNA Opp. at 17–18).

Plaintiffs do not effectively rebut the other five factors.

Factor 1 has been discussed above— Defendants' actions within the forum are not sufficient to confer jurisdiction.

Plaintiff's only argument denying factor 2, burden on Defendants, and factor 4, California's interest in this litigation, is that Defendants were aware that the Sales Contract for the sale of BITNA to Biodata GmbH is governed by American law. (Vestor Opp. at 17–18; BITNA Opp. at 17).

The Plaintiffs' position that the choice of American law in the Sales Contract for BITNA confers jurisdiction on this court overstates its significance. The Sales Contract for the sale of BITNA to Biodata Systems AG provides for transfer of the seller's "participating interest" in BITNA. The seller is Dr. Fritz Westhelle, as administrator in insolvency proceedings for Biodata Information Technology AG, represented by Dr. Jochen Brinkmann. The buyer is Biodata Systems GmbH, represented by its managing director Claus Pla-

ten. Paragraph Nine of the Sales Contract provides:

"The parties are aware that the transfer of the participating interest in the company is governed by American law. Should the present contract still fail to comply with the conditions necessary to transfer the participating interests in the company effectively, the parties commit themselves to undertaking all legal acts, which under American law are necessary for the transfer of the participating interests in the company."

(Ex. A to Plaintiffs' Request for Judicial Notice)

Contrary to Plaintiffs' contention, the German Insolvency Contract provision that "American law will be controlling" does not confer jurisdiction on this Court. This provision merely requires the parties to follow American law as necessary to effect the transfer of Biodata Systems AG's interest in BITNA to Biodata Systems GmbH.

With regard to factor 5, the extent of conflict with the sovereignty of Defendants' state, such a conflict would be created if this Court took jurisdiction away from the German courts which have been dealing with the affairs of these companies.

The German Insolvency Administrator should not be burdened with this Court's interference in its attempts to maintain Biodata Systems AG's viability. Plaintiffs' complaint challenges the Administrator's conduct of proceedings in Germany under the auspices of the German court. Any ruling by this court that the auction of AG's assets, including BITNA, was improper, would undermine the right of the German courts to conduct their bankruptcy proceedings without interference from a foreign judge.

Any attempt to resolve this dispute in California would be an unreasonable hardship for Defendants, all of whom are citizens of Germany, and indeed for all the

parties, since all the evidence relating to Plaintiffs' claims is in Germany. Even the present CEO, CFO and Secretary of BIT-NA is Mr. Platen, a German citizen living and working in Germany. Plaintiffs concede this. (Vestor Opp. at 6–7)

Plaintiffs cannot dispute that German courts constitute an adequate forum for resolution of this dispute, in satisfaction of factor 7, and that the most efficient resolution of the matter would be in Germany, satisfying factor 5. The vast majority of the parties, witnesses and evidence are in Germany. The events leading up to these lawsuits occurred in Germany. The sale of the assets of Biodata AG that forms the basis of Plaintiffs' complaints was conducted according to German law by representatives of the German court.

This Court also finds justification for dismissing Plaintiffs' claims in the doctrine of *forum non conveniens* and *stare decisis*.

### 4) Dismissal is proper under the doctrine of *forum non conveniens*.

■ Any claims over which this court might theoretically have jurisdiction under some tenuous theory should be dismissed under the doctrine of *forum non conveniens*, so they may be resolved in Germany.

■ To obtain dismissal for *forum non conveniens*, Defendants need only show: 1) existence of an adequate alternative forum and 2) that the balance of private and public interest factors favor dismissal. *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 767 (9th Cir.1991).

### A) Germany is an adequate alternative forum.

The requirement of an adequate alternative forum is generally satisfied if the defendant is amenable to service in the alternative forum. *Leetsch v. Freedman*, 260 F.3d 1100, 1103 (9th Cir.2001). As German citizens and corporations, all Defendants are amenable to service of process in Germany.

### B) Private and public interest factors favor Germany as the forum.

If there is an adequate alternative forum, the court balances the private and public interest factors to decide whether to dismiss on grounds of *forum non conveniens*. *Lockman*, 930 F.2d at 769.

The private interest factors include the ease of access to sources of proof, the availability of compulsory process to obtain attendance of hostile witnesses, cost of transporting friendly witnesses, ability to enforce the judgment, and any other problems which might interfere with an expeditious trial. *Leetsch*, 260 F.3d at 1104. All these factors weigh in favor of the German forum

#### i) Sources of proof are in Germany

The vast majority of the evidence and witnesses are in Germany.

#### ii) Compulsory process favors Germany

Compulsory process also favors Germany since all Defendants and almost all of the relevant witnesses are German citizens residing in Germany.

#### iii) Judgments would be enforceable in Germany

Judgments would be enforceable in Germany since all Defendants own property there. Germany is the only forum in which all of the issues related to the sale of Biodata AG's assets may be expeditiously litigated and the German insolvency proceedings are the source of Plaintiff's claims. *See Lockman*, 930 F.2d at 770 (holding that policy favoring expeditious trial weighed in favor of Japanese forum since U.S. court's keeping the case would result in duplicate lawsuits in U.S. and Japan).

The public interest factors making a forum inconvenient include: 1) administrative difficulties flowing from court congestion; 2) imposition of jury duty on people in a community that has no relation to the litigation; 3) local interest in having local controversies litigated locally; 4) interest in having a diversity case tried in the forum familiar with the governing law; and 5) avoidance of unnecessary conflicts of law. *Leetsch,* 260 F.3d at 1105. These factors also weigh heavily in favor of Germany, rather than California, as the proper forum.

### iv) Public interest factors disfavor California as the forum.

The U.S. District Court for the Northern District of California is a busy court. Trying this case here would require translating law and testimony into and from German. It would be an imposition to ask California jurors to decide a dispute concerning German citizens, corporations and property. This is not a local controversy, since all of the assets and rights at issue are located in Germany and all the culminating events occurred in Germany. California has little interest in the liquidation of a German corporation, especially under the auspices of a German court. German law, unfamiliar to this forum and its citizens, governs much of this dispute. This Court is in effect being asked by Plaintiffs to pass judgment on the acts of a German court. For all the above reasons, these complaints should be dismissed under the doctrine of *forum non conveniens.*

5) **Under the doctrine of *stare decisis,* dismissal of claims brought by Ewers in behalf of BITNA should be dismissed because Ewers lacks standing to sue on behalf of BITNA.**

■ The district court (Hon. Joseph C. Spero) on August 19, 2002 entered a preliminary injunction which reflects the stipulation of the parties. Paragraph three of the terms of the injunction provides that Ewers is ordered to:

Cease and desist from taking any action on behalf of Plaintiff or any of its subsidiaries, including BIODATA Information Technology North America, Inc. ("BITNA") (collectively "Biodata").

(Ex. B. To Defendant's Memo of Points & Authorities in Support of Motion to Dismiss).

This court takes judicial notice of the preliminary injunction and finds that under the doctrine of *stare decisis* it effectively removes any standing Ewers may have had to act on behalf of BITNA and accordingly removes yet another contention in support of jurisdiction in this court.

### Conclusion and Order

For all the above reasons, all causes of action against all Defendants in both complaints in the related cases are dismissed with prejudice for lack of personal jurisdiction. All claims by Plaintiff Ewers on behalf of BITNA are dismissed with prejudice for lack of standing to sue. The clerk shall close the file.

IT IS SO ORDERED.