**ECODISC TECHNOLOGY AG, Plaintiff,**

v.

**DVD FORMAT/LOGO LICENSING CORPORATION et al., Defendant.**

Case No. 2:09–cv–07875–MRP–AJW.

United States District Court, C.D. California.

April 22, 2010.

Jeffery Jay Daar, Michael R. Newman, Daar and Newman, Los Angeles, CA, for Plaintiff.

John H. Longwell, Kelli L. Sager, Robert P. Parker, Paul Weiss Rifkind Wharton & Garrison LLP, Washington, DC, Andrew J. Thomas, Davis Wright Tremaine LLP, Los Angeles, CA, for Defendant.

## ORDER RE: MOTIONS TO DISMISS

MARIANA R. PFAELZER, District Judge.

### I. INTRODUCTION

In this unfair competition case, the licensor of a new technology for manufacturing thin optical discs (EcoDisc Technology AG or "Plaintiff") sues the optical disc standard-setting organization ("DVD Forum") and the corporation that licenses that DVD Format standard and DVD Logo (DVD Format/Logo Licensing Corporation or "DVDFLLC")(collectively, "Defendants") to disc replicators worldwide. The First Supplemental Complaint ("FSC") alleges Defendants have threat-

ened all disc replicators that if they manufacture the new thinner disc—the EcoDisc—they will be in breach of their license agreement with DVDFLLC and will no longer be permitted to manufacture standard DVDs or use the DVD Logo. The FSC further alleges that Defendants have placed in the marketplace false information regarding the EcoDisc. Plaintiff contends Defendants are conspiring to keep EcoDiscs out of the market to preserve the predominance of their own DVD formats and specifications.

Plaintiff filed this lawsuit in late October 2009, alleging Defendants have engaged in: a conspiracy to restrain trade in violation of state and federal antitrust law; false advertising in violation of Section 43(a) of the Lanham Act; tortious interference with contractual relations; tortious interference with prospective economic advantage; trade libel; and unfair business practices in violation of California Business & Professions Code § 17200 *et seq.*

Defendants each filed a motion to dismiss the claims against them on separate grounds. DVD Forum, a Japanese trade association, filed a Federal Rule of Civil Procedure ("FRCP") 12(b)(2) motion, contending the Court should dismiss the FSC for lack of personal jurisdiction. DVDFLLC, the licensing corporation, moved to dismiss under FRCP 12(b)(6) for failure to state a claim upon which relief can be granted. DVDFLLC argues Plaintiff's claims are barred under the *Noerr–Pennington* doctrine, which protects the right to petition the government, and Plaintiff otherwise fails to allege cognizable antitrust and false advertising claims. DVDFLLC further argues the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims upon dismissal of the federal causes of action. Plaintiff opposes these motions.

After the Court heard oral argument on Defendants' motions, DVDFLLC filed an *ex parte* application for leave to file a supplemental declaration. Docket No. 42. Plaintiff opposed. The Court **DENIES** the application and proceeds to adjudicate the motions to dismiss.

For the reasons outlined in greater detail below, the Court **GRANTS** DVDFLLC's motion to dismiss the federal antitrust claim on the basis of the *Noerr–Pennington* doctrine and the false advertising claim on the basis of Plaintiff's failure to plead with the particularity required by FRCP 9(b). The dismissal is with leave to amend. The Court declines to address the merits of the state law claims until Plaintiff has pleaded a viable federal cause of action. With respect to DVD Forum's motion to dismiss for lack of personal jurisdiction, the motion is **GRANTED** without leave to amend.

The Court addresses DVDFLLC's motion first.

## II. THE RULE 12(b)(6) MOTION

On a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must accept all factual allegations pleaded in the complaint as true, and construe those facts and draw all reasonable inferences therefrom "in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir.1996); *see also Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116, 1120–21 (9th Cir. 2007). The Court recites the factual background of the case as alleged by Plaintiff.

### A. Background

Defendant DVD Forum is a standard-setting organization that developed a technical standard for optical discs, which it calls the "DVD Format," and which it promotes internationally. FSC ¶ 16. Defendant DVDFLLC is a Japanese corporation which is the exclusive licensor of the DVD

Format standard and the DVD Logo worldwide.[1] FSC ¶¶ 5, 26. DVDFLLC implements policies and procedures that DVD Forum sets through DVD Forum's Steering Committee. FSC ¶ 27. For example, DVDFLLC produces, maintains and issues DVD Format books; registers trademarks and maintains DVD Logos; and polices pirate manufacturers, non-compliant products, and the incorrect usage of DVD Logos. FSC ¶ 25.

DVDFLLC enters into license agreements with disc replicators to allow replicators to manufacture optical discs in compliance with the accepted DVD Format. The license agreements mandate that the proprietary technology may not be used to manufacture, sell or distribute any products that do not comply fully with the specifications set forth in the DVD Format Book. FSC ¶ 56; Saito Decl., Ex. 1 [DVDFLLC License Agreement Art. 2.8].[2] The heart of this dispute is whether disc replicators, licensed by DVDFLLC, are using the specifications in the DVD Format Book to create EcoDiscs that do not fully comply with the technical standard adopted by DVD Forum and required to use the DVD Logo. Plaintiff alleges its 0.6mm discs are compatible with standard DVD players and can be played in 132 different playback systems. *See* FSC ¶ 52.

Plaintiff is a research and development company that licenses "EcoDisc Technology" in Europe and in the United States. FSC ¶ 39. EcoDisc Technology consists of a thin 0.6mm disc that is essentially one-half the thickness of the standard DVD (1.2mm disc) and more flexible. FSC ¶ 40. In addition, an EcoDisc is recyclable and environmentally-friendly. *Id.* Plaintiff alleges Defendants, along with certain of their respective members and shareholders, acted intentionally to suppress the use of innovative EcoDisc Technology and prevent EcoDiscs from competing with the standard DVD promoted by the DVD Forum and DVDFLLC. FSC ¶ 45.

For example, Plaintiff alleges that in 2008 a DVD Forum Working Group, WG–2, conducted a technical study of 0.6mm discs. FSC ¶ 47. At a September 17, 2008 DVD Forum Steering Committee meeting, the DVDFLLC representative reported DVDFLLC was awaiting the WG–2's final report on its technical study to determine "what should be done as to 0.6mm discs." *Id.* Two months later, the Steering Committee met and heard the WG–2's report

1. DVDFLLC has ten shareholders: Hitachi, Philips, Mitsubishi, Panasonic, Pioneer, Sony, Thomson, Time Warner, Toshiba and JVC. FSC ¶ 25.

2. Article 2.1 of the License Agreement provides the license "shall not under any circumstance authorize Licensee or its Affiliates to use the DVD Format Book(s) or the information contained therein in connection with the manufacture, sale or distribution of any Product other than the DVD Products(s) and DVD Product Category(ies) that have been designated by Licensee in Annex A–1 and for which the appropriate license fee has been paid." Saito Decl., Ex. 1. Article 1.17 defines "Product" as "any disc, device or other product that uses information disclosed in a DVD Format Book." Article 1.10 defines "DVD Product" as "a Product identified in Annex A– 2 that conforms to the applicable DVD Format Book(s) specified in Annex A–1." The definition of DVD Product thus appears to be limited to products that use information disclosed in a DVD Format Book. *See* Saito Decl., Ex. 1 [DVDFLLC License Agreement Arts. 1.10, 1.17, 2.1]. As EcoDisc points out in the FSC, Blue-ray discs and DVD + RW discs are not considered DVD Products because they require unique playback systems, different from those of standard DVDs, and the DVDFLLC License Agreement does not prohibit licensees from manufacturing discs in those alternative formats. It is a disputed question of fact, one which is at the heart of this controversy, whether an EcoDisc is a DVD Product, *i.e.*, whether it is replicated using information disclosed in DVDFLLC's proprietary DVD Format Book.

on 0.6mm discs, which judged the EcoDisc non-compliant with DVD Forum's specifications. FSC ¶¶ 47, 51. At this meeting, "[t]here was a further discussion of the issue of 0.6mm discs in the marketplace in Europe." FSC ¶ 47.

Plaintiff further alleges in March 2009, DVDFLLC sent a written communication to all of its licensed replicators throughout the world. FSC ¶ 48. Plaintiff characterizes this communication as a threat to each replicator with a DVDFLLC License Agreement ("License Agreement") that if the replicator manufactures any 0.6mm discs, including an EcoDisc, the manufacture would be a serious breach of the DVDFLLC License Agreement and may lead to early termination. FSC ¶ 48. The letter stated "0.6mm Optical Discs are Not DVD Format Complaint" and "in some instances, such 0.6mm discs have caused damages to the playback apparatus." *Id.* The letter quoted from Article 2.8 of the License Agreement which states, "[t]he License Agreement requires that all DVD products manufactured by Licensees comply with the specifications set forth in the applicable DVD Format Books." *Id.* Moreover, "[t]he manufacturer of non-compliant products, including but not limited to the manufacture of 0.6mm discs, is a serious breach of the DVD Format/Logo License Agreement and may lead to early termination of the DVD Format/Logo License Agreement." *Id.*

DVDFLLC also posted a warning about 0.6mm discs on its website. FSC ¶ 49. The posting stated that the 0.6mm disc does not use DVD Format in a proper manner and "is only imperfectly and inappropriately using the Format. The DVD Forum judged that such a Disc is not compliant with the DVD Specifications. To use DVD Formats for products that do not conform to the Specifications is NOT admissible." *Id.* The posting also states that 0.6mm discs "often cannot be properly

played on existing players and drives, and there have been reports of damages to the discs and/or the hardware.... Licensees are warned that manufacturing non-compliant DVD Products could lead to termination of the License." *Id.*

In response to at least one e-mail from a licensee regarding the March 2009 letter, DVDFLLC reiterated that the 0.6mm disc does not use DVD Format in a proper manner and is non-compliant with DVD Specifications. FSC ¶ 55. DVDFLLC explained that because it "strive[s] to contain non-compliant products from appearing in the market" and in order to "minimize the problems between disc products and hardware," DVDFLLC must instruct its licensees to manufacture *compliant* DVD Products as stipulated in Articles 2.8 and 2.9 of the License Agreement. *Id.*

On June 12, 2009, DVDFLLC filed a complaint in federal court in the Southern District of New York against two licensees for producing EcoDiscs, which were marketed as identical to standard DVD discs in all respects other than thickness. FSC ¶ 60. DVDFLLC later distributed copies of the complaint to other licensees. FSC ¶ 62.

Plaintiff filed this lawsuit in October 2009, contending Defendants are attempting to suppress and prevent competition from EcoDisc "by making knowingly unfounded and unwarranted statements about the reliability of the EcoDiscs and, more importantly, by threatening all of DVD FLLC's licensed replicators that if they make an EcoDisc, they may lose the ability to make standard DVD discs and use the DVD logo." FSC ¶ 54. Subsequent to the filing of this lawsuit, on December 15, 2009, DVDFLLC sent a written communication to licensees offering an amendment to the License Agreement that would allow replication of 0.6mm discs if the licensee places the following warning

on 0.6mm disc packaging: "This disc is not a standard DVD, and may not operate in some drives or players." FSC ¶ 76. Further, the licensee must agree to indemnify DVDFLLC with respect to any costs or liabilities incurred in relation to the manufacture or sale of such discs. *Id.*

DVDFLLC explains that it does not seek to prevent its licensees from manufacturing EcoDiscs at all; it only seeks to prevent them from using the DVD Format and proprietary technology to manufacture an optical disc that is not fully compliant with its specifications. DVDFLLC contends the payability problems that accompany the non-compliant discs damage the brand and diminish the value of the DVD Logo. Plaintiff, on the other hand, alleges the EcoDisc was awarded a 99.2% payability rating and can be safely played in the same manner as a standard DVD. FSC ¶ 52. Plaintiff recognizes there were some ejection problems with certain Apple Mac notebook computers but explains that the slot-in drives on those computers did not meet DVD specifications. FSC ¶ 52. In addition, Plaintiff states EcoDisc had a printed visual warning on each EcoDisc stating it should not be used on an Apple Mac slot-in drive. *Id.* However, Plaintiff has taken steps to change the design of the EcoDisc to avoid this issue. "As of approximately November 2009 [after this lawsuit was filed], EcoDiscs no longer have any known ejection issue on any disc drives." FSC ¶ 70. Plaintiff no longer places warnings on its product. *Id.*

Plaintiff brings two claims for conspiracy to restrain trade. The first is a federal claim for violation of the Section 1 of the Sherman Act, FSC ¶¶ 78–82, and the second is a state claim for violation of the Cartwright Act, FSC ¶¶ 83–86. Plaintiff's third claim is for false advertising in violation of Section 43(a) of the Lanham Act, FSC ¶¶ 87–94, and alleges defendants have made false statement of fact about Eco-

Disc products. The remaining four claims for tortious interference with contractual relations, tortious interference with prospective economic advantage, trade libel, and violation of California Business & Professions Code § 17200 *et seq.* are state law claims over which the Court will exercise supplemental jurisdiction only if the federal claims survive dismissal.

## B. THE LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) only if it appears beyond doubt that the alleged facts, even if true, will not entitle the plaintiff to relief on the theories asserted. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 561, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Stoner v. Santa Clara County Office of Educ.,* 502 F.3d 1116, 1120–21 (9th Cir.2007); *see also Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 338 (9th Cir.1996). While a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (citation, alteration, and internal quotation marks omitted). Moreover, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001). The Supreme Court has stated, "only a complaint that states a plausible claim for relief survives a motion to dismiss.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

Finally, although a court generally cannot look beyond the pleadings, it may con-

sider: (1) any documents attached to the pleadings, *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir.2001); (2) materials that are properly subject to judicial notice under Rule 201 of the Federal Rules of Evidence, *id.* at 688–89; and (3) evidence upon which the complaint "necessarily relies" so long as (a) the complaint refers to the document, (b) the document is central to the plaintiff's claim, and (c) no party questions the authenticity of the document, *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir.2006). Here, the Court considers the following documents referenced in and relied upon by the FSC: (1) the DVDFLLC standard Licensing Agreement, Saito Decl., Ex. 1, (2) the complaint filed by DVDFLLC against its licensee, U–Tech, in the Southern District of New York, Saito Decl., Ex. 2, (3) the December 15, 2009 communication re: supplemental licensing agreement, Saito Decl., Ex. 3, and (4) the DVDFLLC supplemental licensing agreement, Saito Decl., Ex. 4.

## C. DISCUSSION

The Court begins by considering the threshold question of whether DVDFLLC is entitled to immunity from liability under the *Noerr–Pennington* doctrine.

### 1. *Noerr–Pennington* Immunity

The *Noerr–Pennington* doctrine derives from two Supreme Court cases holding that the First Amendment Petition Clause immunizes acts of petitioning the legislature from antitrust liability. *See United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). The doctrine has since been applied to actions petitioning each of the three branches of government, including the courts, and has been expanded beyond its original antitrust context. *Theme Promotions, Inc. v. News Am. Mktg. FSI,* 546 F.3d 991, 1007 (9th Cir.2008). "The essence of the *Noerr–Pennington* doctrine is that those who petition any department of the government for redress are immune from statutory liability for their petitioning conduct." *Id.* at 1006 (9th Cir.2008); *Sosa v. DIRECTV, Inc.,* 437 F.3d 923, 929 (9th Cir.2006). In *Theme Promotions, Inc.,* the Ninth Circuit held the *Noerr–Pennington* doctrine applied to the plaintiff's state law intentional interference with prospective economic advantage claims. *Theme Promotions,* 546 F.3d at 1007. The court explained, "because *Noerr–Pennington* protects federal constitutional rights, it applies *in all contexts,* even where a state law doctrine advances a similar goal." *Id.* (second emphasis added); *see also White v. Lee,* 227 F.3d 1214, 1231 (9th Cir.2000)(stating the *Noerr–Pennington* doctrine is not limited to the antitrust context, but "applies equally in all contexts.") Relying on *Theme Promotions, Inc.* and *White v. Lee,* DVDFLLC thus contends the *Noerr–Pennington* doctrine applies here to bar all of Plaintiff's state and federal law claims. At this time, the Court does not consider whether the doctrine extends to all of Plaintiff's claims because the answer is not necessary to the resolution of the pending motion.[3] The

---

3. *See Citizens United v. Federal Election Commission,* —— U.S. ——, 130 S.Ct. 876, 918, —— L.Ed.2d —— (2010)(Roberts, J., concurring)("Because the stakes are so high, our standard practice is to refrain from addressing constitutional questions except when necessary to rule on particular claims before us."); *Spector Motor Serv., Inc. v. McLaughlin,* 323 U.S. 101, 105, 65 S.Ct. 152, 89 L.Ed. 101 (1944)("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality ... unless such adjudication is unavoidable."); *Ashwander v. TVA,* 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936)(Brandeis, J., concurring)("The Court will not pass upon

Court considers the *Noerr–Pennington* doctrine only in connection with Plaintiff's federal antitrust claim.

### a. *Protected Petitioning Activity*

■ Only litigation activities which constitute communications to the court may be described fairly as petitions. *Sosa,* 437 F.3d at 933. A pre-litigation demand letter directed to a private party, therefore, is not a petition. *Id.* Nevertheless, in connection with the First Amendment's Petition Clause and protection of the right to access the courts, the Ninth Circuit recognizes a breathing space principle which extends immunity under the *Noerr–Pennington* doctrine to conduct which is incidental to petitioning activities, even if it is not itself petitioning activity. *Id.* at 934–35; *see also Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.,* 944 F.2d 1525, 1528–29 (9th Cir.1991), *aff'd* 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993).[4] Under *Sosa,* all communications between private parties related to litigation—including presuit demand letters and settlement offers—are entitled to immunity. *Sosa,* 437 F.3d at 936–37.[5]

■ DVDFLLC argues its communications with licensees and its website announcements, which were intended to enforce and protect its intellectual property, are sufficiently related to petitioning activity to trigger the *Noerr–Pennington* doctrine. *See id.* at 935. Plaintiff disagrees, insisting "[t]he threat to cancel a license to make standard DVDs has nothing to do with the First Amendment's Petition Clause and is not conduct incidental to any lawsuit." Opp. Br. at 10. Plaintiff's argument is insincere because the FSC itself recognizes that DVDFLLC did file a lawsuit against licensees that failed to satisfactorily respond to DVDFLLC's warnings. FSC ¶ 60. The communications at issue in this case asserted DVDFLLC's rights under the License Agreement and warned licensees that manufacturing 0.6mm discs using specifications licensed under the License Agreement could result in litigation. This conduct can be accurately characterized as sufficiently related to litigation to fall within the scope of the *Noerr–Pennington* doctrine.

### b. *Sham Litigation*

■ "Noerr–Pennington immunity is not a shield for petitioning conduct that, although 'ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor.'" *Sosa,* 437 F.3d at 938 (quoting *Noerr,* 365 U.S. at 144, 81 S.Ct. 523). Accordingly, conduct otherwise protected by the *Noerr–Pennington* doctrine may nevertheless be restricted by law if it falls within the "sham litigation" exception.

---

a constitutional question although properly presented by the record, if there is also some other ground upon which the case may be disposed of.").

4. The FSC recites details of DVDFLLC's lawsuit against U–Tech under the heading "Defendants' Efforts To Suppress EcoDisc Technology and EcoDiscs." FSC ¶¶ 60–63. However, Plaintiff's opposition to DVDFLLC's motion to dismiss indicates that the pursuit of the U–Tech lawsuit is not alleged to be anticompetitive conduct, but merely evidence showing malice toward Plaintiff in particular. Opp. Br. at 10 n. 1.

5. The Ninth Circuit explained, "preceding the formal filing of litigation with an invitation to engage in negotiations to settle legal claims is a common, if not universal, feature of modern litigation.... Restricting such prelitigation conduct when the same demands asserted in a petition to the court is protected would render the entire litigation process more onerous, imposing a substantial burden on a party's ability to seek redress from the courts." *Sosa,* 437 F.3d at 936.

*Theme Promotions, Inc.*, 546 F.3d at 1007. In *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, the Supreme Court established a two-part test for determining whether the sham litigation exception applies. 508 U.S. 49, 60–61, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). To establish DVDFLLC's conduct here was a "sham," Plaintiff must prove (1) DVDFLLC's alleged threats were objectively baseless in the sense that it could not have reasonably expected to prevail in litigation *and* (2) DVDFLLC's subjective motivation was to interfere with Plaintiff's business relationships. *See id.*

Plaintiff argues DVDFLLC's alleged threats to revoke licenses were baseless because no licensee was using DVDFLLC's format to manufacture Eco-Discs. Thus, EcoDisc claims that because the alleged threats were a "sham," DVDFLLC is not entitled to the antitrust immunity that generally accompanies petitioning conduct. At this stage in the litigation, the Court need not conclude whether DVDFLLC's conduct was a sham. It must decide only whether Plaintiff has properly pleaded that the conduct was a sham, *i.e.*, objectively unreasonable and subjectively motivated to interfere with Plaintiff's business relationships. Plaintiff must meet a heightened pleading standard because it seeks damages based on conduct that implicates the First Amendment. *Kottle v. N.W. Kidney Centers*, 146 F.3d 1056, 1063 (9th Cir.1998); *Franchise Realty Interstate Corp. v. San Francisco Local Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1082–83 (9th Cir.1976)("[W]here a plaintiff seeks damages or injunctive relief, or both, for conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required.")

DVDFLLC relies on the "objectively reasonable" prong. It contends there are no allegations in the FSC that, if true, would demonstrate DVDFLLC's assertion of its rights against its licensees was completely unfounded. In fact, Plaintiff concedes that the use of the DVD Format book to produce non-compliant discs violates the License Agreement, FSC ¶ 56, and further admits that the EcoDisc does not comply, FSC ¶ 42. Plaintiff insists that licensees do not need to use DVDFLLC's format to create an EcoDisc. However, Plaintiff has not adequately explained in its FSC *how* it is that EcoDiscs can be played on a standard DVD player if manufacturers are not employing DVDFLLC's format standards. DVDFLLC quotes Plaintiff's own allegations that its discs have "the same data structure and same data layer as a conventional DVD–5," FSC ¶ 41, which DVDFLLC contends means EcoDiscs use the same specifications that were developed by DVD Forum and licensed by DVDFLLC.

Plaintiff alleges industry standards exist in the public domain from which a basic DVD can be created in a read-only format. FSC ¶¶ 31–32. The FSC refers to the ECMA standards and *implies* that replicator licensees could use an ECMA standard instead of Defendants' standard to replicate an EcoDisc, but does not allege that they do. *Id.* Plaintiff alleges:

> The EcoDisc does not use the DVD Logo, but rather uses the EcoDisc Logo. An EcoDisc does not use any of the Format standards of the DVD Forum and is not compliant with any DVD Format. The EcoDisc is not a standard DVD. A number of patents of different patent pools are used in the manufacture of an EcoDisc and EcoDisc manufacturers are to pay royalties to these patent pools for the manufacture of an EcoDisc.

FSC ¶ 42. Plaintiff further alleges that an EcoDisc "uses different molds, different specifications, is subject to different patents and patents pending, does not use the DVD Logo, and does not claim to be compliant with any of the specifications of the DVD Forum." *Id.* ¶ 50. Thus, Plaintiff implies Defendants' standards are never used in the manufacture of EcoDiscs and DVDFLLC's license agreements are therefore irrelevant to the production of EcoDiscs.

■ An important factual question, of course, is whether EcoDiscs are replicated by licensees using DVDFLLC's proprietary information from their DVD Format Book. For our immediate purpose, the crucial truth is that Plaintiff has not adequately alleged directly that replicators are not using Defendants' proprietary information in the manufacture of EcoDiscs. Plaintiff clearly alleges that *it* does not use Defendants' standards or format, but as to the replicators, the representations are lacking. The FSC contains no allegations that suggest Defendants' belief that their proprietary standards were being improperly utilized by replicators to manufacture EcoDiscs was unreasonable. Thus, Eco-Disc has not passed the heightened pleading hurdle that the First Amendment requires.

Accordingly, the motion to dismiss is **GRANTED** with leave to amend under the doctrine of *Noerr–Pennington* immunity. To qualify for the sham litigation exception and survive the motion to dismiss, Plaintiff must allege DVDFLLC did not have a reasonable basis to believe its licensees were using its proprietary technology and specifications to make EcoDiscs, but nevertheless threatened its licensees with termination for the improper purpose of interfering with Plaintiff's business.

### 2. Section 43(a) of the Lanham Act

Neither the United States Supreme Court nor the Ninth Circuit Court of Appeals has addressed the applicability of the *Noerr–Pennington* doctrine specifically to claims that arise under Section 43(a) of the Lanham Act. Although the Court may ultimately determine that the *Noerr–Pennington* doctrine applies to the claim, at this time the Court will not address the issue because it concludes the Lanham Act was not pleaded with the particularity required by Federal Rule of Civil Procedure 9(b). *See* supra n. 3; *Santana Prods. v. Bobrick Washroom Equipment, Inc.*, 401 F.3d 123, 135 (3d Cir.2005)("We will not address at this time the *Noerr/Pennington* doctrine's applicability to Lanham Act claims because we conclude that Santana's Lanham Act claim is barred by laches.")

■ Plaintiff claims that DVDFLLC disseminated false statements of fact about plaintiff's EcoDisc product in violation of the false advertising provisions of the Lanham Act. *See* 15 *U.S.C.* § *1125(a)(1)(B).* *To support a claim for false advertising under the Lanham Act, a plaintiff must show:*

(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product;

(2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience;

(3) the deception is material, in that it is likely to influence the purchasing decision;

(4) the defendant caused its false statement to enter interstate commerce; and

(5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir.1997).

DVDFLLC argues Plaintiff must meet the heightened pleading standard of Rule 9(b) because the claim for false advertising is grounded in fraud. Rule 9(b) sets forth: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R.Civ.P. 9(b). Although the Ninth Circuit has not concluded that Rule 9(b) applies to Lanham Act claims, many district courts have applied this heightened pleading standard to claims that are grounded in fraud, such as misrepresentation claims. *See Meridian Project Sys., Inc. v. Hardin Constr. Co., LLC*, 404 F.Supp.2d 1214, 1219–20 (E.D.Cal.2005). The Court agrees that Plaintiff's false advertising claims are grounded in fraud and that Rule 9(b) applies to the pleading of this claim. To satisfy Rule 9(b), Plaintiff must state the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986). Further, Plaintiff must set forth what is false or misleading about a statement, and why it is false. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.2003) (citations omitted).

▆ The Court finds Plaintiff has not met the burden of pleading the claim for false advertising according to the standards of Rule 9(b). Plaintiff identifies three separate communications by DVDFLLC that include alleged false statements without specifying which statements are allegedly false or setting forth what is false or misleading about such statements. First, Plaintiff describes a letter from DVDFLLC to its licensees regarding manufacture of 0.6mm discs such as the EcoDisc under the DVDFLLC License Agreement. FSC ¶ 48. Second, Plaintiff describes information posted on its website regarding 0.6mm discs. FSC

¶ 49. Third, Plaintiff describes a second letter from DVDFLLC to its licensees with a proposed Supplemental Agreement for licensees interested in replicating 0.6mm discs such as the EcoDisc. FSC ¶¶ 75–76. With respect to each of these three communications, Plaintiff has adequately described the time, place and parties to the alleged misrepresentations. However, Plaintiff has failed to identify the specific content of the alleged false representations, set forth what is false about each statement and explain why it is false. DVDFLLC's motion to dismiss Plaintiff's false advertising claim is **GRANTED.** Plaintiff is permitted leave to amend the claims in conformity with Rule 9(b) and this order.

### 3. The State Law Claims

The Court will not address the sufficiency of the state law claims until Plaintiff has adequately pleaded a federal claim. In the absence of a viable federal claim, the Court will decline to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3).

### D. CONCLUSION REGARDING THE RULE 12(B)(6) MOTION

The motion is **GRANTED** in its entirety with leave to amend. Plaintiff may file an amended complaint no later than thirty days from the date of this Order. No further supplemental complaints will be allowed.

### III. THE RULE 12(b)(2) MOTION

Plaintiff alleged in its FSC that the Court has personal jurisdiction over Defendants because they "do substantial business in the State of California and within this District and are transacting and doing business and conducting or otherwise transacting their affairs in this District, and the defendants have performed acts in furtherance of their illegal and wrongful conduct as alleged herein, which have had a substantial effect in this District." FSC

¶ 3. DVD Forum refutes this statement with respect to itself and has moved to dismiss the complaint for lack of personal jurisdiction.

## A. THE LEGAL FRAMEWORK

 As the Ninth Circuit explained in *Schwarzenegger v. Fred Martin Motor Co.*, "[w]here a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." 374 F.3d 797, 800 (9th Cir.2004)(internal quotation and citations omitted). Although the plaintiff cannot "simply rest on the bare allegations of its complaint," *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir.1977), uncontroverted allegations in the complaint must be taken as true, *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir.1996). In addition, the Court considers the declarations submitted by the parties. Any factual conflicts in the parties' declarations must be resolved in Plaintiff's favor. *Harris Rutsky & Co. Ins. Servs. Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir.2003). However, here there are no conflicts.

Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits. *See* Fed.R.Civ.P. 4(k)(1)(A); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir.1998). Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same. *Id.* at 1320 (citing Cal.Civ.Proc.Code § 410.10). The Due Process Clause of the Fourteenth Amendment requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction be consistent with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

 There are two types of personal jurisdiction: general and specific. Where a defendant's contacts with a forum are substantial, continuous and systematic, a defendant can be deemed to be "present" in the forum for all purposes. In that case, general jurisdiction is present. Otherwise, a forum may exercise only "specific" jurisdiction, which is based on the relationship between the defendant's forum contacts and the plaintiff's claim. In both cases, all of a defendant's contacts with the forum state are considered, regardless of whether those contacts involve wrongful activity by the defendant. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006). Finally, the prima facie jurisdictional analysis requires the Court to accept the plaintiff's allegations as true. *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir.2002); *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir.2000).

 In the event that no state within the United States can exercise personal jurisdiction over a defendant, the Court may exercise jurisdiction under Federal Rule of Civil Procedure 4(k)(2).[6] Plaintiff

---

**6.** Rule 4(k)(2) applies in rare situations. In fact, three years ago, the Ninth Circuit remarked that none of its cases thus far had countenanced jurisdiction under the rule. *Holland Am. Line v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir.2007). The Circuits that have concluded Rule 4(k)(2) conferred jurisdiction did so in cases where the defendants had extensive contacts to the country. *See id.; e.g., Mwani v. bin Laden*, 417 F.3d 1, 13 (D.C.Cir.2005)(defendants engaged in numerous conspiracies to bomb U.S.

now concedes that neither California nor any other state may exercise personal jurisdiction over DVD Forum and it urges the Court to apply Rule 4(k)(2), which governs the territorial limits of effective service. As a practical matter, the rule is used to aggregate a foreign defendant's contacts with the country in order to find jurisdiction proper when contacts with any individual state are insufficient. Rule 4(k)(2) provides:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Accordingly, a court may exercise jurisdiction when three requirements are met. First, the claim against the defendant must arise under federal law. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir.2006). Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. *Id.* Third, the federal court's exercise of personal jurisdiction must comport with due process. *Id.*

With respect to the first requirement, two of Plaintiff's claims arise under federal law, the Sherman Act and the Lanham Act. With respect to the second requirement, Plaintiff now contends jurisdiction is not proper in any state court.[7] DVD Forum itself has not conceded to jurisdiction in any state. So long as a defendant does not concede to jurisdiction in another state, a court may use Rule 4(k)(2) to confer jurisdiction. *See Holland Am. Line*

*v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 461–62 (9th Cir.2007). Accordingly, the second requirement of Rule 4(k)(2) is met.

It is the third requirement, the due process requirement, that is not satisfied. The due process analysis under Rule 4(k)(2) is identical to the traditional personal jurisdiction analysis, however, the contacts are measured with respect to the United States rather than an individual forum state. *Pebble Beach Co.*, 453 F.3d at 1159. Importantly, Plaintiff offers no examples of contacts between DVD Forum and another state that are different from DVD Forum's contacts with California. In other words, DVD Forum's aggregated contacts with the United States are no greater than, and not meaningfully different from, its contacts with California.

### B. THE PARTIES

#### 1. EcoDisc

Plaintiff EcoDisc Technology AG is a Swiss corporation with its principal place of business in Switzerland. FSC ¶ 4. Plaintiff describes itself as a research and development company that licenses certain technology relating to optical discs with a thickness of 0.6mm rather than the standard 1.2mm of the DVD Format. FSC ¶¶ 38–39. Plaintiff licenses its technology to replicators which manufacture EcoDiscs with EcoDisc Technology. *Id.*

#### 2. DVD Forum

Defendant DVD Forum is an unincorporated DVD industry association, comprised of over one hundred members worldwide, with its principal place of business in Japan. 01/08/10 Irie Decl. ¶¶ 1, 3; FSC ¶ 7.

---

landmarks); *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir.2004)(defendant directly insured hundreds of claims in the U.S.).

7. Plaintiff's opposition brief declares that jurisdiction is proper under Rule 4(k)(2) and presents its argument within that framework. At oral argument, counsel again urged the Court to apply Rule 4(k)(2).

DVD Forum is governed by a Steering Committee which meets at least twice a year. 01/08/10 Irie Decl. ¶ 3, Ex. A at 7 [DVD Forum Charter, Art. 8(3) ]. The Steering Committee approves all decisions relating to the licensing of DVD Formats and the DVD Logo to third parties, including terms and conditions. 01/08/10 Irie Decl., Ex. A at 8 [DVD Forum Charter, Art. 8(5)(b) ]. DVD Forum also has Working Groups, which develop physical specifications for the DVD Format. *Id.* at 9–10 [DVD Forum Charter, Art. 10].

DVD Forum periodically holds meetings throughout the world, a few each year; the meetings typically last one or two days. *See* 01/08/10 Irie Decl. ¶ 6. Over the course of the last twelve years, nine meetings have been held in the state of California, seven of which were held in the Central District of California. *Id.* The record does not indicate any meetings were held anywhere else in the United States. *See* Opp. Br., Exs. 11–15. DVD Forum has charged a registration fee at its conferences, which Plaintiff implies is equivalent to transacting business in California, but DVD Forum is a non-profit organization. 03/08/10 Irie Decl. ¶¶ 2–3. In an effort to link specific acts of DVD Forum to the claims in this case, the FSC alleges the subject of "0.6 mm discs in the marketplace in Europe" was discussed at the meetings of the DVD Forum Steering Committee held in September and November 2008. FSC ¶ 47. However, neither of those meetings were held in the United States. 01/08/10 Irie Decl. ¶ 7.

DVD Forum has limited contacts with the United States. It does not make or sell any products or engage in commercial business activities. *Id.* ¶ 3. It does not have a bank account, employees, an office, or any assets or property in California. *Id.* ¶ 5. It does not have an agent designated for service of process in California. *Id.* Upon advancing its Rule 4(k)(2) theory of jurisdiction, Plaintiff did not additionally allege any of the aforementioned indicators of presence in any other state.

Finally, DVD Forum maintains an informational website on which it posts informational announcements. 01/08/10 Irie Decl. ¶ 4. The announcements are passive, are not addressed to any particular recipient, and do not invite comment or response. *Id.* One announcement DVD Forum posted states, "0.6mm Thick Optical Disc does not use the DVD Format in a proper manner. It is only imperfectly and inappropriately using the Format. The DVD Forum judged that such a disc is not compliant with the DVD Specifications." FSC ¶ 53. DVD Forum does list two verification laboratories on its website, which it approves as Class–A labs and which are located in the Central District of California. 03/08/10 Irie Decl. ¶ 4. However, DVD Forum does not own or administer those laboratories. *Id.*

The FSC alleges no actions taken by DVD Forum in the United States, or directed at the United States, related to 0.6 mm discs. There is no evidence that any of the content on DVD Forum's website is designed specifically for the California or the United States market, and, as explained further below, mere web presence is insufficient to establish personal jurisdiction. *Panavision Int'l,* 141 F.3d at 1322 (9th Cir.1998).

### 3. DVDFLLC

DVD Forum publishes and licenses its DVD Format throughout the United States through DVDFLLC, a Japanese corporation. DVDFLLC issues DVD Format Books, registers trademarks and maintains DVD logos, and polices pirate manufacturers. FSC ¶ 25. DVDFLLC, not DVD Forum, is alleged to have sent threatening, written communications to disc replicators. FSC ¶¶ 48, 75.

DVDFLLC, not DVD Forum, is alleged to have posted on its website information regarding 0.6mm thick optical discs that such discs are not DVD Format compliant and the manufacture of non-compliant products "is a serious breach of the DVD Format/Logo License Agreement and may lead to early termination" of the License Agreement. FSC ¶¶ 48–49. DVDFLLC, not DVD Forum, is alleged to have filed a complaint in the Southern District of New York against licensees. FSC ¶¶ 60–61.

**C. RELEVANT CONTACTS**

Plaintiff seeks to impute the activities of DVDFLLC to DVD Forum for the purposes of personal jurisdiction. For example, Plaintiff alleges that DVD Forum "made the determinations that form the basis for this lawsuit"—concluding Eco-Discs and other 0.6mm discs do not use the DVD Forum's DVD Format in a proper manner—and DVDFLLC used this judgment to threaten disc replicators worldwide. Opp. Br. at 1–2. Plaintiff also argues the DVD Forum Steering Committee directs the activities of DVDFLLC and attributes to DVD Forum the lawsuit DVDFLLC filed against its licensee, U-Tech. *Id.* at 9. Importantly, Plaintiff never alleges DVDFLLC is an agent or the alter ego of DVD Forum. If the two entities are separate and distinct, DVDFLLC's presence in a forum state may not be attributed to DVD Forum. *Doe v. Unocal Corp.,* 248 F.3d 915, 925–26 (9th Cir.2001); *AT & T Co.,* 94 F.3d at 591 ("A parent corporation's relationship with its subsidiary may confer personal jurisdiction over the parent if the subsidiary is acting as the parent company's alter ego, so as to justify disregard of the corporate entity, but AT & T failed to make out a prima facie case that Keystone was GBL's alter ego." (internal citations and quotation marks omitted)); *Holland Am. Line,* 485 F.3d at 459 ("It is well established that, as a general rule, where a parent and a sub-

sidiary are separate and distinct corporate entities, the presence of one [ ] in a forum state may not be attributed to the other [ ].")

 Plaintiff also seeks to piggy-back off DVDFLLC's contacts by employing a conspiracy theory of jurisdiction. Plaintiff argues, "[u]nder the circumstance of an alleged conspiracy, the minimum contacts test has been met." Opp. Br. at 17. However, California law does not recognize conspiracy as a basis for acquiring jurisdiction over a foreign defendant. *U.S. Vestor, LLC v. Biodata Info. Tech., AG,* 290 F.Supp.2d 1057, 1065 (N.D.Cal.2003); *Mansour v. Superior Court,* 38 Cal. App.4th 1750, 1760, 46 Cal.Rptr.2d 191 (1995). Thus, actions taken by co-conspirators in furtherance of the conspiracy cannot be attributed to a conspirator for purposes of establishing personal jurisdiction. *CenterPoint Energy, Inc. v. Superior Court,* 157 Cal.App.4th 1101, 1118, 69 Cal. Rptr.3d 202 (2007); *see* 12 California Jurisprudence 3d Civil Conspiracy § 3; *Morris v. Atchity,* No. CV 08–5321–RSWL, 2009 WL 463971, *3 (C.D.Cal. Jan. 13, 2009).

The only relevant contacts here are DVD Forum's contacts. DVD Forum's contacts with the United States are the same as its contacts with California, which is to say that Plaintiff has not proffered any additional contacts between DVD Forum itself and states other than California. Thus, the jurisdictional analysis under Rule 4(k)(2) is essentially identical to the analysis of personal jurisdiction in California. It therefore follows that by Plaintiff's concession that DVD Forum is not subject to personal jurisdiction in California, and its failure to offer any additional contacts with any other state, Plaintiff has admitted DVD Forum does not have the requisite contacts with the United States either. The Court cannot conclude otherwise.

Nevertheless, the Court will conduct a Rule 4(k)(2) analysis of personal jurisdiction, considering the contacts of DVD Forum only; DVDFLLC's contacts are not relevant. DVD Forum's purpose, website, and meetings are evidence of its contacts with the United States. First, the purpose of DVD Forum is to propagate its standards and encourage their adoption worldwide. Second, DVD Forum maintains an informational, non-interactive website, which also contains announcements related to the DVD Format and its use. Third, DVD Forum occasionally holds meetings in the United States, but there is no allegation that 0.6mm discs were discussed at any meeting in the United States.

**D. Jurisdictional Analysis**

**1. General Jurisdiction**

To be haled into court in the United States in an action unrelated to its contacts with the country, DVD Forum's contacts must be substantial or "continuous and systematic." *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). "The standard for establishing general jurisdiction is 'fairly high' and requires that the defendant's contacts be of the sort that approximate physical presence." *Bancroft & Masters, Inc.,* 223 F.3d at 1086 (quoting *Brand v. Menlove Dodge,* 796 F.2d 1070, 1073 (9th Cir.1986)).

■ DVD Forum's contacts with the United States are insufficient to qualify as either substantial or continuous and systematic. As outlined above, DVD Forum does not make or sell any products or engage in commercial business activities anywhere. 01/08/10 Irie Decl. ¶ 3. It does not have a bank account, employees, an office, an agent designated for service of process, or any assets or property in California. *Id.* ¶ 5. Plaintiff has not alleged, and there is no indication in the record, that any of these factors are present in

any other state either. The absence of these factors indicates DVD Forum has not established a physical presence in the United States. *See Bancroft & Masters, Inc.,* 223 F.3d at 1086 (reciting factors to be taken into consideration); *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114, 1124–25 (9th Cir.2002).

**2. Specific Jurisdiction**

■ Plaintiff has failed to establish a prima facie case of general jurisdiction. However, the Court may still exercise personal jurisdiction if the case arises out of certain forum-related acts. "[S]pecific jurisdiction is tethered to a relationship between the forum and the claim." *Holland Am. Line Inc.,* 485 F.3d at 460. Under Rule 4(k)(2), the United States is the relevant forum. In the Ninth Circuit, specific jurisdiction exists when the following three elements are met:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger,* 374 F.3d at 802 (quoting *Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir.1987)); *Brayton Purcell LLP v. Recordon & Recordon,* 575 F.3d 981, 985 (9th Cir.2009). "The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Schwarzenegger,* 374 F.3d at 802. Only after the

plaintiff succeeds in satisfying both of the first two prongs does the burden shift to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable. *Id.* Because the Court finds Plaintiff has failed to satisfy the first two prongs, the Court will not reach the third.

### a. Purposeful Direction

The Ninth Circuit treats the purposeful availment prong as a purposeful direction prong in a tort case. Where the defendant is accused of a tort, the inquiry is whether the defendant purposefully directed its activities at the forum state, applying an "effect" test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum. *See Schwarzenegger,* 374 F.3d at 802; *Calder v. Jones,* 465 U.S. 783, 789–90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). The effect test has three requirements: the defendant allegedly must have " '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.' " *Schwarzenegger,* 374 F.3d at 803 (quoting *Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1111 (9th Cir.2002)).[8]

The Ninth Circuit has emphasized that a foreign act with foreseeable effects on the forum state does not always give rise to specific jurisdiction; there must be "express aiming" at the forum state. *Bancroft & Masters, Inc.,* 223 F.3d at 1087. The court explained that the express aiming requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state. *Id.* at 1087–88 (citing five prior Ninth Circuit cases which "bear out the conclusion that 'express aiming' encompasses wrongful conduct individually targeting a known forum resident."); *accord Rio Props., Inc.,* 284 F.3d at 1020–21 (defendant targeted its marketing campaign toward Nevada, which was plaintiff's principal place of business).

DVD Forum takes the position that the express aiming requirement is satisfied only when a defendant targets a plaintiff who is a resident of the forum state and, therefore, there can be no express aiming at the United States in this case because Plaintiff is a Swiss corporation and not a U.S. resident. DVD Forum is incorrect. Express aiming encompasses conduct "expressly aimed at the forum state." *Schwarzenegger,* 374 F.3d at 803. While such conduct can include specifically targeting the plaintiff whom the defendant knows to be a resident of the forum state, it can also include specifically targeting the state itself. For example, in Schwarzenegger, the Ninth Circuit found the defendant expressly aimed its conduct at Ohio, the state in which he circulated offending advertisements, rather than at California, the state in which the plaintiff was known to reside. *Id.* at 807. Accordingly, the Court rejects DVD Forum's argument that express aiming at the United States is foreclosed due to Plaintiff's Swiss residency.[9]

---

8. Later, the Ninth Circuit clarified that the "brunt" of the harm need not be suffered in the forum state. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F.3d 1199, 1207 (9th Cir.2006)(en banc). "If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state." *Id.*

9. The distinction between *Schwarzenegger* and cases in which courts have found express aiming at a forum by virtue of plaintiffs known residency may lie in the nature of the intentional act. In *Calder v. Jones,* where the plaintiff claimed she was libeled, and *Panavision Int'l, L.P. v. Toeppen,* where the plaintiff was a competitor, the plaintiffs were the target of the intentional act and thus the acts were expressly aimed at the plaintiffs and the states in which the defendant knew the plain-

#### i. Intentional Act

Here, the effect test falters at the first prong because Plaintiff has not offered an intentional act upon which purposeful direction can be based. Plaintiff contends DVD Forum aims its conduct to the United States by seeking to have its standards and formats used for all DVD discs replicated in the United States. However, in the context of the "intentional act" test, the Ninth Circuit construes the term intent "as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act."[10] *Id.* at 806. Therefore, DVD Forum's purpose of having its standard DVD formats and specifications accepted and used on a worldwide basis cannot be considered an intentional act for the purpose of express aiming. For the same reason, the alleged conspiracy to foreclose EcoDisc from the optical disc market cannot qualify as an intentional act because it constitutes an intent to accomplish a result Plaintiff is left only with the website, website announcements, and the Steering Committee meetings as possible intentional acts.

#### ii. Express Aiming

DVD Forum's website is informational and passive, making it insufficient for the assertion of specific jurisdiction in the absence of other targeting activities. *Pebble Beach*, 453 F.3d at 1158; *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir.

1997). "It is beyond dispute in this circuit that maintenance of a passive website alone cannot satisfy the express aiming prong." *Brayton Purcell LLP*, 575 F.3d at 986. However, if there were "something more," *i.e.*, other conduct targeting the forum, the contacts could be sufficient to confer personal jurisdiction. *Cf. Panavision Int'l, L.P.*, 141 F.3d at 1321–22 (use of plaintiff's domain name was part of a plan to target and extort competitor plaintiff, creating personal jurisdiction over defendant in the state where plaintiff resided); *Pebble Beach*, 453 F.3d at 1156–57 (plaintiff and defendant were not competitors and defendant's use of plaintiff's name in his domain name was part of a legitimate operation not a plan targeting plaintiff). Here, Plaintiff argues the posting of the announcement regarding 0.6mm discs on the DVD Forum website constitutes an intentional act. However, the announcement regarding 0.6mm discs did not target California or American residents in particular. It applied, and was viewed, internationally. To the extent the announcement targeted Plaintiff as a competitor, Plaintiff is a Swiss corporation that would be injured—if at all—in Switzerland.

Plaintiff contends the DVD Forum Steering Committee meetings held in Fall 2008 constitute intentional acts and give rise to the current suit because 0.6mm discs were discussed. But both of those meetings were held in Europe, not in the

---

tiffs resided. *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir.1998). In *Schwarzenegger*, the effect on the plaintiff was incidental; he was not the target of the conduct. 374 F.3d at 807. Likewise, in *Pebble Beach*, the Ninth Circuit found the defendant did not expressly aim its conduct at California or the United States, despite his knowledge that plaintiff resided there, because the only acts identified as being directed at California or the United States were the maintenance of a website that could

be accessed worldwide and the use of the name "Pebble Beach" in the domain name. 453 F.3d at 1156. The passive website did not target a particular audience, and it did not target the plaintiff because the two were not competitors; the "something more" was missing.

**10.** "The result or consequence of the act is relevant, but with respect to the third part of the Calder test—'harm suffered in the forum.'" *Schwarzenegger*, 374 F.3d at 806.

United States, and the discussion was regarding "the issue of 0.6 mm discs in the marketplace in Europe." *See* FSC ¶ 47. Neither the topic nor the location of the meetings have anything to do with the United States. This allegation also fails to show express aiming at the United States.

### iii. Foreseeable Harm

With respect to the meetings that DVD Forum Steering Committee held in California as intentional acts expressly aimed at the United States, Plaintiff has not linked any of those meetings to the claims in this case. Plaintiff therefore fails to properly allege how the meetings have caused foreseeable harm in the forum state, as the third prong of the effects test. Moreover, because the California meetings do not give rise to the current suit, they fail the "but for" causation prong—the second prong—of the specific jurisdiction test.

### b. *"Arising Out Of" Activities In California*

For a court properly to exercise specific jurisdiction, "the contacts constituting purposeful availment must be the ones that give rise to the current suit." *Bancroft & Masters, Inc.,* 223 F.3d at 1088. This prong is met if "but for" the contacts between the defendant and the forum state, the cause of action would not have arisen. *Id.; Terracom v. Valley Nat'l Bank,* 49 F.3d 555, 561 (9th Cir.1995). Plaintiff has not alleged any of the meetings DVD Forum held in California gave rise to its claims. And, as already explained, the announcement posted on the passive globally accessible website cannot confer jurisdiction simply because California residents can access it. Such a result would cast the jurisdictional net of California in an unconstitutionally broad manner. Thus, the second element of the specific jurisdiction test is not satisfied.

### c. *Due Process Considerations*

The final requirement for specific jurisdiction is that it comport with fair play and substantial justice. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Because the Court finds Plaintiff has failed to satisfy the first two prongs, the Court need not engage in such a reasonableness determination.

### E. REQUEST FOR ADDITIONAL DISCOVERY

A court may permit discovery to aid in determining whether it has personal jurisdiction. *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 430 n. 24 (9th Cir.1977). Discovery is appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary. *See id.* On the other hand, " 'where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery....' " *Pebble Beach Co.,* 453 F.3d at 1160 (quoting *Terracom,* 49 F.3d at 562).

The declarations of Hideyuki Irie, submitted by DVD Forum, address the few relevant facts put at issue, and were not controverted by the Plaintiff. Plaintiff requests extensive and burdensome jurisdictional discovery but has failed to demonstrate how further discovery would allow it to contradict the Irie declaration. The Court concludes that additional discovery would be futile and will not yield any facts relevant to jurisdictional issues. Accordingly, the request for additional discovery is **DENIED.**

### F. CONCLUSION REGARDING THE RULE 12(B)(2) MOTION

The Court concludes the contacts between DVD Forum and the United States are random and attenuated. DVD Forum does not have an office or employees in the

United States. It does not sell products to the United States. Nothing in the record links DVD Forum to the United States except for a few conferences in California. A defendant should not be haled into court as a result of such random, fortuitous or attenuated contacts. *See Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. 2174. Moreover, as the Ninth Circuit has explained, "[w]here, as here, the defendant is from a foreign nation rather than another state, the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction." *Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*, 1 F.3d 848, 852 (9th Cir.1993), quoted by *Glencore Grain Rotterdam B.V.*, 284 F.3d at 1126. Accordingly, the Court **GRANTS** DVD Forum's motion to dismiss the complaint for lack of personal jurisdiction. The complaint is **DISMISSED** against DVD Forum **WITH PREJUDICE.**

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** DVDFLLC's motion to dismiss in its entirety **WITH LEAVE TO AMEND.** Plaintiff may file an amended complaint no later than thirty (30) days from the date of this Order. No further supplemental complaints will be allowed.

The Court **DENIES** Plaintiff's request for jurisdictional discovery and GRANTS DVD Forum's motion to dismiss the complaint for lack of personal jurisdiction. The complaint is DISMISSED against DVD Forum **WITH PREJUDICE.**

**IT IS SO ORDERED.**